# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# PECOS DIVISION

| | |
|---|---|
| ADAM PARDUE, Individually and For Others Similarly Situated,<br><br>  Plaintiff,<br><br>v.<br><br>3B INSPECTION, LLC,<br><br>  Defendant. | Case No. 4:21-cv-00020<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Plaintiff Adam Pardue (Pardue) brings this lawsuit to recover unpaid overtime wages and other damages from Defendant 3B Inspection, LLC (3B) under the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201 *et seq.*

2. Pardue worked for 3B as an Inspector.

3. Pardue and the Day Rate Inspectors (as defined below) regularly worked more than 40 hours a week.

4. But these workers never received overtime for hours worked in excess of 40 hours in a single workweek.

5. Instead of paying overtime as required by the FLSA, 3B pays these workers a flat amount for each day worked (a "day rate") without overtime compensation.

6. 3B never paid Pardue or the Day Rate Inspectors a guaranteed salary.

7. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. Venue is proper under 28 U.S.C. § 1391(b)(2) since a substantial part of the events giving rise to this claim occurred in this District and Division.

10. Pardue worked for 3B in this District and Division.

11. Specifically, Pardue worked for 3B in and around Pecos, Texas.

12. 3B conducts substantial business operations in this District and Division.

## PARTIES

13. Pardue worked for 3B as an Inspector from approximately October 2019 until January 2020.

14. Throughout his employment with 3B, 3B paid Pardue a day rate with no overtime compensation.

15. Pardue's written consent to be a party plaintiff is attached as Exhibit 1.

16. Pardue brings this action on behalf of himself and all other similarly situated inspectors who were paid by 3B's day rate pay scheme.

17. 3B paid each of these workers a flat amount for each day worked and failed to pay them overtime for hours worked in excess of 40 in a workweek in accordance with the FLSA.

18. The collective of similarly situated employees or Day Rate Inspectors sought to be certified is defined as follows:

> **All current and former 3B Inspectors who were paid a day rate with no overtime at any time during the past 3 years (Day Rate Inspectors).**

19. The Day Rate Inspectors are easily ascertainable from 3B's business and personnel records.

20. Defendant 3B, LLC is a limited liability company headquartered in Ft. Worth, Texas that may be served with process by serving its registered agent: **Jordan Strouse, 6363 Woodway Suite 1000, Houston, Texas 77057**.

### COVERAGE UNDER THE FLSA

21. At all relevant times, 3B has been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

22. At all relevant times, 3B has been an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

23. At all relevant times, 3B has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). 3B has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and personal protective equipment - that have been moved in or produced for commerce.

24. In each of the last 3 years, 3B has had annual gross volume of sales made or business done of at least $500,000.

25. At all relevant times, Pardue and the Day Rate Inspectors were engaged in commerce or in the production of goods for commerce.

26. 3B uniformly applied its policy of paying its employees, including Pardue, a day rate with no overtime compensation.

27. 3B applied this policy regardless of any alleged individualized factors such as precise job position, job duties/responsibilities, client assignments, inspector type, or geographic location.

28. By paying its inspectors a day rate with no overtime compensation, 3B violated (and continues to violate) the FLSA's requirement that it pay its employees overtime compensation at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

29. As a result of this policy, Pardue and the Day Rate Inspectors do not receive overtime as required by the FLSA.

30. 3B's uniform compensation scheme of paying its employees a day rate with no overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTUAL ALLEGATIONS

31. 3B bills itself as an industry leader "[p]roviding [i]nspection [a]nd [i]ntegrity [s]ervices [a]cross [t]he USA and Canada" including the following types of Inspectors: Construction Coordinators, Chief Inspectors, Assistant Chief Inspectors, Certified Welding Inspectors, Certified API 653 Tank Inspectors, Safety Inspector NDT – Auditors, E&I Inspectors, NACE Coating Inspectors, Utility Inspectors, Non-Certified Welding Inspectors, Non-Certified Tank Inspectors, Material Expediters, Vendor Inspectors, Tie-In Inspectors, Direction Drill Inspectors, Safety Inspectors, and Office Managers.[1]

32. To complete its business objectives, 3B hires Inspectors, such as Pardue, to inspect, observe, and test the workmanship and materials for compliance with its clients' policies and procedures, including the plans, specifications and applicable codes throughout the United States.

33. Many of these individuals worked for 3B on a day rate basis (without overtime pay).

34. These workers make up the proposed Putative Class.

35. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

36. For example, Pardue worked for 3B as a Utility Inspector from approximately October 2019 until January 2020 in and around Pecos, Texas.

---

[1] htthttps://3binspection.com/services/ (last visited April 6, 2021).

37. Throughout his employment with 3B, 3B paid him on a day rate basis.

38. Indeed, when 3B hired Pardue, it admitted 3B would pay him on a day rate basis with no overtime in his offer letter:



39. Pardue and the Day Rate Inspectors work for 3B under its day rate pay scheme.

40. Pardue and the Day Rate Inspectors do not receive a salary.

41. 3B admits it only pays Pardue and the Day Rate Inspectors their day rate "for actual days worked."

42. Despite requiring Pardue and the Day Rate Inspectors submit timesheets to 3B for approval, 3B requires them to list only 10 hours for each day they worked, regardless of the actual number of hours they worked in a day or workweek.

43. If Pardue and the Day Rate Inspectors did not work, they did not get paid.

44. Pardue and the Day Rate Inspectors receive a day rate.

45. Pardue and the Day Rate Inspectors do not receive overtime pay.

46. This is despite the fact that Pardue and the Day Rate Inspectors often worker 12+ hours a day, for as many as 7 days a week, for weeks at a time.

47. For example, Pardue received a day rate of approximately $540 (including various perdiems) for each day he worked for 3B.

48. Although he typically worked 7 days a week, often for 12+ hours a day, 3B never paid Pardue any overtime compensation.

49. Pardue and the Day Rate Inspectors work in accordance with the schedule set by 3B and/or its clients.

50. Pardue's work schedule is typical of the Day Rate Inspectors.

51. Pardue and the Day Rate Inspectors received the day rate regardless of the number of hours they worked, and even if they worked more than 40 hours in a workweek.

52. 3B controls Pardue and the Day Rate Inspectors' pay.

53. Likewise, 3B and/or its clients control Pardue and the Day Rate Inspectors' work.

54. 3B requires Pardue and the Day Rate Inspectors to follow 3B and/or its clients' policies and procedures.

55. Pardue and the Day Rate Inspectors' work must adhere to the quality standards put in place by 3B and/or its clients.

56. Pardue and the Day Rate Inspectors are not required to possess any unique or specialized skillset (other than that maintained by all other inspectors in their respective positions) to perform their job duties.

57. At all relevant times, 3B and/or its clients maintained control, oversite, and direction of Pardue and the Day Rate Inspectors, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

58. Pardue and the Day Rate Inspectors do not have the power to hire, fire, or discipline any employees.

59. Pardue's working relationship with 3B is similar to that of the Day Rate Inspectors.

60. 3B knows Pardue and the Day Rate Inspectors work for 12+ hours a day, for as many as 7 days a week.

61. 3B's records reflect the fact that Pardue and the Day Rate Inspectors regularly work far in excess of 40 hours in certain workweeks.

62. 3B does not pay Pardue or the Day Rate Inspectors overtime for hours worked in excess of 40 in any of those weeks.

63. Instead, 3B pays Pardue and the Day Rate Inspectors on a day rate basis.

64. 3B controls all the significant or meaningful aspects of the job duties Pardue and the Day Rate Inspectors perform.

65. 3B exercises control over the hours and locations Pardue and the Day Rate Inspectors work, the tools and equipment they use, the reports they provide, the hours they record on their timesheets, and the rates of pay they receive.

66. Very little skill, training, or initiative is required of Pardue and the Day Rate Inspectors to perform their job duties.

67. Indeed, the daily and weekly activities of Pardue and the Day Rate Inspectors are routine and largely governed by standardized plans, procedures, and checklists created by 3B and/or its clients.

68. Virtually every job function is predetermined by 3B (or its clients), including the tools and equipment used at the job site, the data to compile, the schedule of work, and related work duties.

69. 3B prohibits Pardue and the Day Rate Inspectors from varying their job duties outside of the predetermined parameters and requires Pardue and the Day Rate Inspectors to follow 3B's (or its clients') policies, procedures, and directives.

70. All of 3B's Day Rate Inspectors perform similar inspection job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities they perform.

71. All of 3B's Day Rate Inspectors work similar hours and are denied overtime as a result of the same illegal pay practice.

72. All of 3B's Day Rate Inspectors work in excess of 40 hours each week and often work 84+ hours in a workweek.

73. 3B uniformly denies Pardue and the Day Rate Inspectors overtime for the hours they work in excess of 40 hours in a single workweek.

74. Pardue and the Day Rate Inspectors are not employed on a salary basis.

75. Pardue and the Day Rate Inspectors do not, and have never, received guaranteed weekly compensation from 3B irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

76. 3B's policy of paying Pardue and the Day Rate Inspectors a day rate with no overtime compensation violates the FLSA because it deprives Pardue and the Day Rate Inspectors of overtime for the hours they work in excess of 40 hours in a single workweek.

77. 3B knew Pardue and the Day Rate Inspectors worked more than 40 hours in a week.

78. 3B knew, or showed reckless disregard for whether, the Day Rate Inspectors were not exempt from the FLSA's overtime provisions.

79. Nonetheless, 3B failed to pay Pardue and the Day Rate Inspectors overtime.

80. 3B knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

81. Pardue brings this claim as a collective action under the FLSA.

82. The Day Rate Inspectors were victimized by 3B's pattern, practice, and/or policy which is in willful violation of the FLSA.

83. Numerous other day rate inspectors worked with Pardue and indicated they were paid in the same manner (a day rate with no overtime) and performed similar work.

84. Based on his experiences with 3B, Pardue is aware that 3B's illegal practices were imposed on the Day Rate Inspectors.

85. The Day Rate Inspectors are similarly situated in all relevant respects.

86. Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

87. The illegal day rate policy that 3B imposes on Pardue is likewise imposed on all Day Rate Inspectors.

88. Numerous individuals are victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

89. The Day Rate Inspectors are similarly denied overtime when they work more than 40 hours per week.

90. The overtime owed to Pardue and the Day Rate Inspectors will be calculated using the same records and using the same formula.

91. Pardue's experiences are therefore typical of the experiences of the Day Rate Inspectors.

92. The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

93. Pardue has no interest contrary to, or in conflict with, the Day Rate Inspectors that would prevent class or collective treatment.

94. Like each Day Rate Inspector, Pardue has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

95. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

96. Absent a collective action, many Day Rate Inspectors will not obtain redress of their injuries, and 3B will reap the unjust benefits of violating the FLSA.

97. Further, even if some of the Day Rate Inspectors could afford individual litigation against 3B, it would be unduly burdensome to the judicial system.

98. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Day Rate Inspectors, as well as provide judicial consistency.

99. Pardue and the Day Rate Inspectors sustained damages arising out of 3B's illegal and uniform employment policy.

100. Pardue knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

101. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to 3B's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

102. 3B is liable under the FLSA for failing to pay overtime to Pardue and the Day Rate Inspectors.

103. Consistent with 3B's illegal day rate policy, Pardue and the Day Rate Inspectors were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

104. As part of their regular business practices, 3B intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Pardue and the Day Rate Inspectors.

105. 3B's illegal day rate policy deprived Pardue and the Day Rate Inspectors of the premium overtime wages they are owed under federal law.

106. 3B is aware, or should have been aware, that the FLSA required them to pay Pardue and the Day Rate Inspectors overtime premiums for all hours worked in excess of 40 hours per workweek.

107. There are many similarly situated Day Rate Inspectors who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

108. This notice should be sent to the Day Rate Inspectors pursuant to 29 U.S.C. § 216(b).

109. Those similarly situated employees are known to 3B, are readily identifiable, and can be determined through 3B's business records.

## CAUSE OF ACTION
## VIOLATION OF THE FLSA

110. Pardue brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

111. 3B employed, or employs, Pardue and the Day Rate Inspectors within the meaning of the FLSA.

112. By failing to pay Pardue and the Day Rate Inspectors overtime when they worked in excess of 40 hours in a workweek, 3B has violated, and is violating, Section 7 of the FLSA. 29 U.S.C. § 207.

113. 3B failed to pay Pardue and the Day Rate Inspectors a guaranteed salary or on a "salary basis."

114. 3B failed to pay Pardue and the Day Rate Inspectors overtime as required by the FLSA.

115. Instead, 3B paid Pardue and the Day Rate Inspectors a day rate with no overtime.

116. 3B knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Day Rate Inspectors overtime compensation.

117. 3B's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

118. Accordingly, Pardue and the Day Rate Inspectors are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

## JURY DEMAND

119. Pardue demands a trial by jury.

## PRAYER

WHEREFORE, Pardue, individually, and on behalf of the Day Rate Inspectors respectfully requests that this Court grant the following relief:

a. An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Day Rate Inspectors to permit them to join this action by filing a written notice of consent;

b. A judgment against 3B awarding Pardue and the Putative Members all their unpaid overtime compensation and an additional, equal amount, as liquidated damages;

c. Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA;

d. An order awarding attorneys' fees, costs, and expenses;

e. Pre- and post-judgment interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ *Michael A. Josephson*
    **Michael A. Josephson**
    TX Bar No. 24014780
    **Andrew W. Dunlap**
    TX Bar No. 24078444
    **Taylor A. Jones**
    TX Bar No. 24107823
    **JOSEPHSON DUNLAP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    tjones@mybackwages.com

    **Richard J. (Rex) Burch**
    TX Bar No. 24001807
    **BRUCKNER BURCH, PLLC**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS FOR PLAINTIFF**
    **& PUTATIVE CLASS MEMBERS**