**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | |
|---|---|
| ADAM PARDUE, Individually and For Others Similarly Situated, | **Case No. 4:21-cv-00020-DC-DF** |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |
| 3B INSPECTION, LLC, | |
| Defendant. | |

**PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT**
**AGREEMENT AND RELEASE**

Plaintiff Adam Pardue ("Pardue")) submits this Unopposed Motion for Approval of Settlement Agreement and Release.  The Settlement Agreement and Release (the "Agreement"), a copy of which was previously attached as Exhibit A to the Parties' Joint Motion for Leave of Court to File Settlement Agreement Under Seal, entered into by and between Pardue and Defendant 3B Inspection, LLC ("3BI," together with Pardue, the "Parties") represents a fair and reasonable resolution of a *bona fide* dispute between Pardue and the Settlement Class Members (as defined in the Agreement and below), on the one hand, and 3BI, on the other, under the Fair Labor Standards Act ("FLSA").   Pardue therefore respectfully asks the Court to approve the Agreement in its entirety.

The Agreement provides Plaintiff and the Settlement Class Members with a reasonable recovery in light of the risks inherent in continued litigation and trial.  3BI has defended the claims asserted in this Lawsuit and continues to deny that it committed any wrongdoing or violated any state or federal wage and hour law in any respect, including the FLSA. The costs, risks, and delays inherent to protracted and continued litigation balanced against the benefits of this Settlement, demonstrate that the Agreement is in the best interest of the Settlement Class Members and should be approved.

1

1.      **PROCEDURAL HISTORY**

Pardue filed this putative collective action on April 7, 2021, on behalf of himself and all other alleged similarly situated workers whom Pardue contends 3BI misclassified and paid a day rate with no overtime compensation in violation of the FLSA (the "Putative Class Members").   ECF 1.   3BI denies Pardue's allegations in the Lawsuit and specifically denies that Pardue or any of the Putative Class Members whom he purports and seeks to represent, which encompass the Settlement Class Members, are entitled to additional wage compensation and denies that it has violated the law in any respect, including the FLSA. ECF 7. After 3BI made an appearance in this matter, the Parties spent the next eight months discussing 3BI's Motion to Compel Arbitration, engaging in informal settlement discussions, and exchanging extensive written discovery, including voluminous document production. On October 20, 2021, the Parties attended a full-day mediation with an experienced wage-and-hour mediator, Dennis Clifford, and a settlement was reached shortly thereafter. ECF 22. The Parties further agreed to toll the statutes of limitations applicable to the Potential Class Members' claims against 3BI for unpaid overtime compensation under the FLSA for a period beginning June 16, 2021, until November 13, 2021.

On January 6, 2022, the Parties executed the Agreement, which Pardue now requests that the Court approve.

2.      **KEY TERMS OF SETTLEMENT**

Under the Agreement, 3BI agrees to pay a Gross Settlement Amount of ███████ to settle the claims of the "Potential Class Members" (approximately 90 inspectors, already identified by the Parties, and inclusive of Pardue and the Current Opt-Ins). The Gross Settlement Amount covers all of the wage and hour claims of the Potential Class Members, a Fee Award to Class Counsel of ███ ██████ of Gross Settlement Amount, a Cost Award to Class Counsel of ███████, and a Service award to Pardue of ██████ for his services as the Class Representative. The "Net Settlement

Amount" is the amount remaining to be distributed to the Settlement Class Members after the Fee Award, the Cost Award, and the Service Award are deducted from the Gross Settlement Amount.

Each Settlement Class Member's Settlement Payment will be determined on a *pro rata* basis based on the Parties' best estimate of the number of covered workweeks each Potential Class Member worked on a 3BI project during the Class Period.  In exchange for their respective Settlement Payments, and for the other consideration detailed in the Agreement, the Settlement Class Members shall release 3BI and the Released Parties from: any and all state, local, or federal claims, obligations, demands, actions, rights, causes of action, and liabilities, whether known or unknown, against any of the Released Parties for alleged unpaid compensation, unpaid wages or overtime wages, unpaid or miscalculated bonus payments, misclassification, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, attorneys' fees, litigation costs, restitution, or other compensation and relief, arising under the FLSA, 29 U.S.C. § 200 et seq., or any state or local wage/hour law, regulation, or rule. *See* Exhibit A attached to the Parties' Joint Motion for Leave of Court to File Settlement Agreement Under Seal .

Within fifteen days following the Court's approval of the Agreement, Class Counsel will send a Notice to each of the Potential Class Members. *Id.* at ¶ 6.1. The Notice, Notice E-mail, Reminder Post Card, and Phone Script, which are attached as Exhibits 1, 3, 4, and 5 include, among other things, a summary of the Lawsuit, the amount of the Potential Class Member's Settlement, instructions regarding how to participate in the Settlement and become a Settlement Class Member, and the effect of becoming a Settlement Class Member, including the Released Claims a Settlement Participant will release against the Released Parties. The Consent language, which is attached at Exhibit 2 further apprises the Potential Class Members of the effect of joining the Settlement Class and electing to become a Settlement Class Member. Pardue respectfully asks the Court to approve the Notice and the Consent along with the Agreement.

3

Within thirty (30) days of the Court granting this Motion, 3BI will wire the Cost Award, Attorneys' Fee Award, and the Service Award to Class Counsel. Within thirty (30) days after the close of the Notice Period, 3BI shall deliver to Class Counsel any payment necessary to fully fund the Settlement Payments claimed by the Settlement Class Members. Only Pardue, the Current Opt-Ins, and the Settlement Class Members who timely join the Settlement Class during the Notice Period will be bound by the terms of the Settlement and release the Released Parties from all Released Claims.

### 3. LEGAL STANDARD

"If the settlement reflects 'a reasonable compromise over issues,' the court may approve it." *Graham v. Jet Specialty, Inc.,* No. MO-15-CV-135-DAE, 2016 WL 7479956, at *1 (W.D. Tex. May 11, 2016)(citing *Villeda v. Landry's Rests., Inc.*, No. H-08-2287, 2009 WL 3233405, at *1 (S.D. Tex. Oct. 7, 2009). The settlement must therefore be a fair and reasonable resolution of the Parties' bona fide dispute under the FLSA. *See Lynn's Food Stores*, 679 F.2d at 1355.

### 4. THE COURT SHOULD APPROVE THE AGREEMENT.

Pardue now seeks the Court's approval of the Agreement along with the Notice, Consent, Notice E-mail, Reminder Post Card, and Phone Script. The Agreement represents a fair and reasonable compromise of a bona fide dispute concerning the legality of 3BI's compensation practices with respect to Pardue and the Settlement Class Members.

#### A. A Bona Fide Dispute Existed Between the Parties.

The Agreement resolves a bona fide dispute. In the instant case, the Parties contested the claims and defenses asserted. Pardue alleged that 3BI misclassified the alleged Putative Class Members in order to avoid paying them overtime as required by the FLSA. 3BI argued, among other things, that it did not owe Pardue or any of the Putative Class Members whom he purports and seeks to represent overtime compensation because they were properly classified as exempt from the overtime requirements of the FLSA based on the duties they performed.

Further, as detailed further below, this case was settled after over eight months of litigation and extensive work by the Parties and their counsel. Prior to the filing of this suit, Class Counsel performed extensive research and investigation regarding 3BI's pay practice, potential liability, potential settlement, and whether 3BI acted in good faith (or willfully) in its classification of the Settlement Class Members. After Pardue initiated the Lawsuit, the Parties exchanged extensive written discovery, voluminous pages of document production, and attended a full day of mediation. The Parties worked to resolve various complex, disputed issues, such as issues regarding conditional certification, numerous discovery disputes, tolling, and damages calculations. And if the case were not settled, there would be extensive work to come, including motion practice related to 3BI's Motion to Compel Arbitration, dispositive motions, a request for conditional certification, a motion for decertification of any conditionally certified collective class, depositions, associated discovery disputes, questions regarding the classification of Plaintiff and the Putative Class Members, good faith, willfulness, pretrial motions, trial, and potential appellate issues. The Parties therefore engaged in significant work, recognize and appreciate the risks and costs associated with continued litigation should this case not settle, and recognize that the proposed Settlement represents a compromise based on the reasonable range and odds of potential outcomes and damages.

If the matter was not resolved by settlement, there was a risk that Pardue would not succeed in pursuing collective treatment of the Lawsuit, or that 3BI would have been granted decertification.

Throughout the litigation, 3BI denied the material facts and any violation of the FLSA, and vigorously defended its position. These facts demonstrate a bona fide dispute between the Parties.

**B.   The Settlement is Fair and Reasonable.**

"There is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, Case No. 09-682, 2010 WL 1688793, at *1 (M.D. La. Apr. 26, 2010) (citing *Camp v. Progressive Corp.*, Case Nos. 01-2680, 03-2507, 2004 WL 2149079, at *5 (E.D. La. Sept. 23, 2004)). In

addition, the fact "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id.*

Class Counsel has considerable experience prosecuting and settling FLSA cases, and in this case, were particularly well-informed as to the facts and circumstances of the litigation and the risk of not prevailing at trial. *See Cotton v. Hinton*, 559 F. 2d 1326, 1330 (5th Cir. 1977) (holding that the court is "entitled to rely upon the judgment of experienced counsel for the parties" in assessing a settlement and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel"); *Shaw v. CAS, Inc.*, No. 5:17-cv-142, 2018 WL 3621050, at *3 (S.D. Tex. Jan. 31, 2018) (preliminarily approving settlement where counsel believed settlement was reasonable and adequate based on "comprehensive knowledge of the facts and legal issues"); *Liger v. New Orleans Hornets NBA Ltd. P'ship*, No. 05-1969, 2009 WL 2856246, at *4 (E.D. La. Aug. 28, 2009) ("The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a . . . settlement.") (internal citations omitted).  Class Counsel has served as lead counsel in numerous large-scale wage and hour class/collective actions. *See, e.g.*, *Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183 (6th Cir. 2017) (reversing trial court's grant of summary judgment in favor of defendant); *Roussell v. Brinker Int'l, Inc.*, 09- 20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011) (affirming jury verdict in FLSA collective action); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006) (affirming summary judgment in favor of a nationwide class of FLSA plaintiffs).

Pardue, as Class Representative, and Class Counsel both believe approval of the Agreement is in the Settlement Class Members' best interest and that the Agreement is fair and reasonable.

### i.   <u>The Agreement was Fairly and Honestly Negotiated</u>

Here, the Agreement was the product of arms' length negotiations among experienced counsel. The settlement was reached after the Parties engaged in extensive discovery over many months regarding Pardue's, the Current Opt-Ins', and Putative Class Members' payroll records, time

sheets, and 3BI's pay and business practices, followed by prolonged settlement negotiations, which also spanned many months and involved the exchange of additional information on an informal basis.

### ii.      The Ultimate Outcome of the Ligation was Unknown

As outlined above, the Parties disagree about the merits of Plaintiff's claims and the viability of 3BI's defenses. The Parties dispute whether: Pardue is required to arbitrate his claims, Pardue and the Putative Class Members are entitled to unpaid overtime under the FLSA, the hours Pardue and the Putative Class Members worked each week, 3BI acted in good faith and thus whether liquidated damages are appropriate, and 3BI acted willfully, which would affect whether Plaintiff and the Putative Class Members may recover under a two-year or three-year statute of limitations. The proposed Settlement allows the Parties to resolve these matters instead of litigating these uncertain legal and factual issues.

If the litigation had continued, the Parties would have faced obstacles and uncertainties, including the outcome of motions to compel arbitration on an individual basis, for collective action certification, for summary judgment, and for decertification, and potentially a trial on the merits of unknown size and scope.

A trial on the merits would involve significant risks as to liability. Even if Pardue could maintain a collective throughout trial, he would have to defeat 3BI's argument he and such Putative Class Members were properly classified as exempt from overtime under the FLSA based on the duties they performed under the administrative, executive, or highly-compensated-employee exemptions.

Despite the Fifth Circuit's ruling in *Hewitt v. Helix Energy Solutions Group, Inc.,* if 3BI were to show it paid a guarantee of at least the minimum weekly required amount, regardless of the number of hours, days or shifts worked, and that a reasonable relationship existed between the guaranteed amount and the amount actually earned, 3BI could have arguably been able to show that Pardue and

the alleged Putative Class Members were not entitled to overtime compensation.  Finally, after overcoming all of these obstacles, Pardue would still need to prove the amount of damages suffered.

### iii.    The Value of the Settlement is Significant

The benefit that the Settlement Participants will receive under the Settlement is substantial when compared against the maximum they could have received if they had prevailed at trial.

The Parties had numerous disputes, including (1) whether Pardue or any of the alleged Putative Class Members were properly classified as exempt from overtime under one or more exceptions to the FLSA's overtime requirements based on the duties they performed; (2) the number of hours Pardue and the alleged  Putative Class Members worked each week; (3) whether 3BI's alleged FLSA violations were made in good faith; and (4) whether 3BI's alleged FLSA violations were willful. The resolution of each of these issues had the potential to eliminate or prejudice the litigation in 3BI's favor.

In spite of the hotly contested case, the Settlement provides the Settlement Class Members with an average recovery from the Maximum Settlement Amount of approximately ▮▮. Further the Settlement represents ▮▮ of the two-year back wages amount. Considering the settlement only covers 3BI's liability, this is a substantial recovery considering the ongoing risks of litigation, the defenses at issue, and the real possibility of a protracted fight for unpaid overtime. Further, because the scope of the Settlement (and release) is limited to only 3BI, the Settlement Class Members have not given up any of their rights to recover additional unpaid overtime from other entities who may also be liable as their employers.

As such, the recovery before the Court is an outstanding result and more than fair and reasonable. In the present case, the proposed Agreement will provide Settlement Payments to the Settlement Class Members representing a substantial percentage of their claimed damages as calculated by the Parties. The proposed method of allocation (individual payments proportionate to their claimed

damages) is fair to all. *Lazy Oil Co. v. Witco,* 95 F. Supp. 2d 290, 339 (W.D. Pa. 1997) (approving 35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D. Ga. 1993) (12.7% to 15.3%); *In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted); *Shaw v. Toshiba America Information Systems, Inc.,* 91 F. Supp. 2d 942, 988 (E.D. Tex. 2000) (citing study conducted by the National Economic Research Associates: "the average result achieved for class members was only 7% to 11% of claimed damages.").

Furthermore, as part of the Agreement, Settlement Participants will only be releasing the Released Parties from liability and will not be releasing from liability any other companies they may have been staffed to.

The quality of this result speaks for itself, and no further analysis, or speculation about net expected value, is required. *Wong v. Accretive Health, Inc.,* 773 F.3d 859, 863-864 (7th Cir. 2014).

### iv.   Pardue and Class Counsel Support the Settlement

Class Counsel has comprehensive knowledge of the facts and legal issues relating to the applicable claims and defenses and has ample evidence on which to base an informed assessment of the proposed Agreement. Based on Class Counsel's knowledge of the case and the applicable law, as

well as their experience in numerous similar wage and hour collective actions, Plaintiffs' Counsel believes the Agreement is fair and reasonable. This factor supports approval of the Agreement. *Isby v. Bayh,* 75 F. 3d 1191, 1200 (7th Cir. 1996) ("the district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate."). Additionally, Pardue, as Class Representative, approved the terms of the Agreement. In light of the foregoing, the Court should approve the Parties' proposed Agreement in this action.

### C.  Pardue's Service Award is Reasonable.

Pardue's requested service award for his service as the Class Representative is reasonable, and 3BI does not object to the same. Service awards to class representatives are permissible where they are fair and reasonable. *See In re Heartland Payment Sys.,* 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012) (stating that courts often permit payment to class representatives above the amounts received by class members). *Purdie v. Ace Cash Express, Inc.,* No. 301CV1754L, 2003 WL 22976611, at *7 (N.D.Tex. Dec. 11, 2003) (finding a service of $16,655 for the named plaintiffs to be fair and reasonable); *Jones v. JGC Dallas LLC,* No. 3:11-CV-2743-O, 2014 WL 7332551, at *5 (N.D. Tex. Nov. 12, 2014), (approving $3,250 incentive awards to each of four class representatives out of a common fund of $920,000); *De Hoyos v. Allstate Corp.,* 240 F.R.D. 269 (W.D.Tex.2007) (approving award of $5,000 to named plaintiffs in Rule 23(b)(2) class action suit); *Camp v. Progressive Corp.,* No. Civ. A. 01–2680, 2004 WL 2149079 (E.D.La. Sept.23, 2004) (approving award of $10,000 to named plaintiff and awards of $1,000 to $2,500 to other FLSA collective action members who assisted in litigation out of $5.4 million settlement fund); *Purdie v. Ace Cash Express, Inc.,* No. Civ.A. 301CV1754L, 2003 WL 22976611 (N.D.Tex.2003) (approving award of $16,665 in incentive payments to the named plaintiffs out of $11 million settlement fund); *Henderson v. Eaton,* No. Civ. A. 01–0138, 2002 WL 3145728 (E.D.La. Oct. 25, 2002) (approving award of $3,000 to named plaintiff who participated extensively in litigation); *In*

*re Lease Oil Antitrust Litigation* (No. II), 186 F.R.D. 403 (S.D.Tex.1999) (approving awards of up to $10,000 per class representative out of $164.2 million settlement fund).

When analyzing the propriety of a service award, courts have considered:

> 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Humphrey v. United Way of Tex. Gulf Coast*, 802 F. Supp. 2d 847, 869 (S.D. Tex. 2011).

The proposed ███████ service award to Pardue is reasonable, and 3BI does not oppose this amount. The service award represents a mere ██████ of the Net Settlement Amount and is intended to recognize Pardue's initiative and efforts as the Class Representative on behalf of the Settlement Class Members and the time and effort he contributed to this Lawsuit and the settlement over the last year. Indeed, Pardue took a substantial risk in bringing the claims relating to 3BI's alleged FLSA violations. In doing so, Pardue faced potential retaliation and blackballing from prospective employers in the oil industry who, by merely performing a quick Google search of his name, may quickly see he sued his former employer for back wages. *Id.* Moreover, Pardue expended significant effort and time in educating Class Counsel regarding his job experiences, compensation, and hours worked, as well as 3BI's policies and procedures. *Id.* Likewise, Pardue assisted throughout the litigation by providing information related to his work for 3BI and participating in settlement discussions and the settlement approval process to help ensure the Settlement Class Members recover their alleged unpaid wages. *Id.* Pardue also participated in numerous telephone conferences with Class Counsel and their staff over the course of the litigation. *Id.*

Because Pardue took significant personal risks in representing the interests of the Settlement Class Members and worked diligently to ensure the Settlement Class Members could recover the wages they are allegedly due, the proposed ███████ service award agreed to by the Parties is reasonable to

compensate him for these inherent risks and his substantial efforts as the Class Representative on behalf of the Settlement Class Members.

### D. **The Attorney's Fee Award to Class Counsel is Reasonable.**

Pardue's attorneys' fees are part of the bargained for Settlement. In accordance with the governing contingency fee agreement, the Parties agreed to set Class Counsel's fees at ███ of the Gross Settlement Amount. Class Counsel's Fee Award was separately negotiated, independently and after settlement of Pardue and the Settlement Class Members' recovery, and approval of this aspect of the Agreement is not required. 3BI does not oppose Class Counsel's request for a Fee Award of up to ███ of the Maximum Settlement Amount.

The Fifth Circuit recognizes that contingency fees are desirable—particularly in common fund cases like this one—because it is predictable, encourages settlement, and reduces incentives for protracted litigation. *Union Asset Mgmt. v. Dell, Inc.*, 669 F.3d 632, 643-44 (5th Cir. 2012) ("district courts in this Circuit regularly use the percentage method blended with a Johnson reasonableness check, and for some it is the 'preferred method.'").

Within the Fifth Circuit, customary contingency fees for class funds have ranged from 33.33% to 50%. *See In re Bayou Sorrel Class Action*, No. 6:04CV1101, 2006 WL 3230771, at *1 (W.D. La. Oct. 31, 2006). In FLSA cases such as this, the "customary contingency" in the Fifth Circuit is within the range of 35 to 40%. *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001).

For these reasons, Plaintiff believes a fee of ███ and costs up to ████ are reasonable and necessary in this case.

### 5. **CONCLUSION**

For the foregoing reasons, Plaintiff requests the Court approve the Parties' Settlement, including all of the terms set forth in the Agreement; maintain jurisdiction over this action while the

Settlement is being administered; and upon joint request from the Parties, dismiss this action and all claims asserted herein with prejudice. A proposed order is attached hereto.

**Dated: January 7, 2022.**                                   Respectfully submitted,

**JOSEPHSON DUNLAP**

By: */s/ Michael A. Josephson*
**Michael A. Josephson**
TX Bar No. 24014780
**Andrew W. Dunlap**
TX Bar No. 2407844
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF &
THE SETTLEMENT CLASS**

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2022, I served the foregoing pleading on all parties and/or their counsel of record via this Court's CM/ECF electronic filing system in accordance with the Federal Rules of Civil Procedure.

*/s/Michael A. Josephson*
**Michael A. Josephson**

## CERTIFICATE OF CONFERENCE

I hereby certify that prior to filing the instant Motion, I conferred with 3BI's Counsel, who confirmed 3BI is unopposed to the requested relief as evidenced by the Parties' Settlement Agreement.

*/s/ Michael A. Josephson*
**Michael A. Josephson**

**EXHIBIT 1**
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | |
|---|---|
| ADAM PARDUE, Individually and For Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>3B INSPECTION, LLC,<br><br>    Defendant. | **Case No. 4:21-cv-00020-DC-DF**<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

**IMPORTANT NOTICE REGARDING**
**SETTLEMENT WITH 3B INSPECTION, LLC**

**To: _____**
**Re: Inspector Settlement with 3B Inspection, LLC**

### WHY AM I GETTING THIS NOTICE?

**You are receiving this Notice because it has been determined that you are eligible to participate in a settlement and claim $_____ by becoming a plaintiff in the above-captioned lawsuit. This Notice explains how to become a plaintiff and claim your portion of the settlement.**

This Notice is intended to provide you with information in connection with the recent settlement of the above-captioned lawsuit against 3B Inspection, LLC ("3BI"). In the lawsuit, the plaintiff, Adam Pardue, claims that 3BI misclassified him and other inspectors and did not pay them the proper overtime premium when they worked more than 40 hours a week as required by the Fair Labor Standards Act ("FLSA"). The plaintiff contends that 3BI's pay practice violated the overtime laws. As is explained below, 3BI denies that its practices violated any laws and denies that it owes any amount to the plaintiff or any other individual who might become a plaintiff in the lawsuit.

Based on records and invoices examined in the lawsuit, you are eligible to receive money under the settlement if you follow the procedures outlined in this Notice to become a plaintiff in the lawsuit. You may also take no action in response to this Notice if you do not wish to participate in the settlement. This is a time-sensitive notice and if you wish to claim money you must do so before the deadline.

### HOW DO I PARTICIPATE IN THE SETTLEMENT?

To participate in the settlement, become a plaintiff in the above-captioned lawsuit, and claim $_____, you must fill out the attached Consent Form and Release and the attached Form W-

9. The Settlement Consent Form and Release, along with the attached Form W-9, **must be returned by U.S. Mail (postmark date), fax, or e- mail by _____, if you want to receive money from the settlement.** If you do *not* want to accept the settlement, simply do nothing.

### WHAT HAPPENS IF I SUBMIT A CONSENT FORM AND RELEASE?

If you return the Settlement Consent Form and Release, along with the attached Form W-9, by _____:

1.       You will receive your settlement payment in the amount of $_____. Neither 3BI, nor any other Released Party will take any retaliatory action against you for participating in this lawsuit and accepting a settlement of your allegedly unpaid overtime compensation.

2.       You will be acknowledging that you are represented by Josephson Dunlap Law Firm and Bruckner Burch PLLC (collectively, "Class Counsel") and that you will be bound by the terms of the Professional Services Agreement signed by the Named Plaintiff in the lawsuit, Adam Pardue. You **will not** have to pay Class Counsel any money directly.

3.       You will be waiving and releasing all "Released Claims," which include any and all state, local, or federal claims, obligations, demands, actions, rights, causes of action, and liabilities, whether known or unknown, against any of the Released Parties for alleged unpaid compensation, unpaid wages or overtime wages, unpaid or miscalculated bonus payments, misclassification, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, attorneys' fees, litigation costs, restitution, or other compensation and relief, arising under the FLSA, 29 U.S.C. § 200 *et seq.*, or any state or local wage/hour law, regulation, or rule.

4.       For only the time that you performed work as an employee of or on behalf of 3BI, you will be releasing the Released Parties by accepting this settlement. The "Released Parties" include 3B Inspection, LLC and all of its past, present, and future officers, directors, principals, agents, employees, parents, shareholders, partners, subsidiaries, holding companies, affiliates, predecessors, successors, assigns, joint venturers, and each of their respective past or present directors, officers, employees, partners, members, employee benefit plan administrators and fiduciaries, trustees, principals, agents, insurers, co-insurers, re-insurers, managers, shareholders, attorneys, and personal or legal representatives, in their individual and corporate capacities. Released Parties includes, specifically and without limitation, Robert Beall and Lindsey Beall. Kinder Morgan Energy Partners LP is not a Released Party.

### WHAT HAPPENS IF I DO NOT SUBMIT A CONSENT FORM AND RELEASE?

You are not required to return the Consent Form and Release and you may do nothing in response to this Notice. If you do not timely return a Consent Form and Release and Form W-9, you will not receive any money under the settlement.

### YOUR SHARE OF THE SETTLEMENT.

By submitting the Consent Form and Release and the Form W-9, you will be entitled as a plaintiff in the above-captioned lawsuit to a payment from the settlement. Your settlement payment will be based on your history working as an employee of or on behalf of 3BI, including the number of

weeks you worked in the relevant period and the compensation you received. Your settlement payment is estimated to be: $_____.

## WHAT DOES THE COURT THINK?

While the Court approved this settlement and you receiving a settlement payment, the Court did not determine that 3BI (or anyone else) did anything wrong. The Court has made no determination as to whether you or anyone else who is eligible to participate in the settlement is owed any money by 3BI or any other Released Party.

## WHAT DOES 3BI THINK?

3BI believes that the lawsuit is without merit, that it accordingly was not responsible for paying you overtime premiums, and that it did not violate the FLSA or any other law in any way. 3BI nonetheless views this settlement as a business solution to avoid the time, expense, and uncertainty of litigation. It does not in connection with this settlement acknowledge any wrongdoing or liability of any kind.

## CONFIDENTIALITY

If you submit a Consent Form and Release and Form W-9, you agree to keep this matter, the terms and existence of the settlement with 3BI, and any amounts that you receive as part of the settlement with 3BI, confidential.

## WHAT IF I HAVE OTHER QUESTIONS?

This Notice is only a summary. If you have additional questions, please call or email Class Counsel at the number listed below. **All calls are confidential and free of charge.**

Josephson Dunlap LLP - 800-719-1617 - info@mybackwages.com

The deadline for receiving your completed Consent Form and Release will not be extended under any circumstances. **If you return your Consent Form and Release and Form W-9 by mail, they must be postmarked by _____. If you return your Consent Form and Release and Form W-9 by fax or e-mail, they must be received by _____. If you do not meet these deadlines, you will not receive money from the settlement.**

**Please do not contact the Court regarding this Notice. The Court must remain neutral in this matter and cannot offer you advice.**

Please return the Consent Form and Release to:
**Overtime Lawsuit Against 3B Inspection, LLC**
**Josephson Dunlap**
**11 Greenway Plaza, Suite 3050**
**Houston, Texas 77046**
**Telephone: (888) 992-2990**
**Fax: (713) 352-3300**
**Email: info@mybackwages.com**

**EXHIBIT 2**
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | |
|---|---|
| ADAM PARDUE, Individually and For Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>3B INSPECTION, LLC,<br><br>    Defendant. | **Case No. 4:21-cv-00020-DC-DF**<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

**SETTLEMENT CONSENT FORM AND RELEASE**

To claim my estimated settlement in the amount of $_____, I confirm that I have read and understand the Notice regarding the overtime settlement with 3B Inspection, LLC ("3BI"). I had the opportunity to talk to the attorneys at Josephson Dunlap Law Firm and/or Bruckner Burch PLLC, in addition to any other attorney of my choosing, about my rights and obligations under the settlement. I am making an informed, knowledgeable, and voluntary decision to sign this Consent Form and Release so I can obtain my settlement share.

I hereby consent to become a plaintiff in this lawsuit and to receive my settlement share. In consideration for the payment of my settlement share, I waive and release any and all state, local, or federal claims, obligations, demands, actions, rights, causes of action, and liabilities, whether known or unknown, against any of the Released Parties for alleged unpaid compensation, unpaid wages or overtime wages, unpaid or miscalculated bonus payments, misclassification, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, attorneys' fees, litigation costs, restitution, or other compensation and relief, arising under the FLSA, 29 U.S.C. § 200 *et seq.*, or any state or local wage/hour law, regulation, or rule.

In further consideration of the payment of my settlement share, I agree to keep the terms and existence of the settlement with 3BI and any amounts that I receive as part of the settlement with 3BI confidential, which means that I agree not to disclose this information to any third parties, including, but not limited to, any current or former employees of the Released Parties, the media, the press, or on any websites or blogs or through social media. I further understand that I may disclose such confidential information only to my spouse, my tax advisor, or my legal counsel, and as to all such persons to whom disclosure is made, I acknowledge that such disclosure must be made with the condition that the persons receiving the confidential information maintain it in strict confidence.

**I understand that the deadline for returning a signed Consent Form and Release and a completed Form W-9 is _____. If I return my Consent Form and Release and Form W-**

**9 by mail, it must be postmarked by this deadline to be timely. If I return my Consent Form and Release and Form W-9 by fax or e-mail, it must be received by this deadline to be timely. I understand that I will not receive a settlement payment if my Consent Form and Release and Form W-9 are not returned timely.**

By signing, dating, and submitting this Settlement Consent Form and Release, I understand that I will have been deemed to have consented to join the referenced lawsuit as a plaintiff and consented to assert any and all such claims in this litigation pursuant to Section 216(b) of the Fair Labor Standards Act and, if applicable, all state and local wage-and-hour laws, including, if applicable, the NMMWA. I agree that I consent to be represented by the class representative and bound by the settlement and the dismissal with prejudice of all claims in the lawsuit, which will be entered by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____        _____
(Sign Your Name Here)                                          (Date)

_____
Printed Name

_____
Cell Phone

_____
Email Address

This is the address/contact information we have on file for you:

      [Class Member Name]
      [Class Member Street Address]
      [Class Member City, State Zip Code].

If your current address is different, please provide it in the space below:

Name: _____
Address: _____
Address: _____
Phone: _____
Email: _____

**EXHIBIT 3**
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | |
|---|---|
| ADAM PARDUE, Individually and For Others Similarly Situated, | **Case No. 4:21-cv-00020-DC-DF** |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |
| 3B INSPECTION, LLC, | |
| Defendant. | |

**NOTICE EMAIL**

---

**TIME SENSITIVE NOTICE OF SETTLEMENT OF UNPAID OVERTIME COLLECTIVE ACTION LAWSUIT AGAINST 3B INSPECTION, LLC ("3BI")**

Dear 3BI Inspector:

A lawsuit brought against 3BI on behalf of Inspectors has settled. The lawsuit claimed these individuals employed by 3BI should have been paid overtime under federal law. 3BI denies the allegations and claims in the lawsuit.

You are receiving this message because 3BI's records indicate you are eligible to become a plaintiff in the lawsuit and to receive money under the settlement for unpaid wages. Your estimated share of the settlement is $_____. The attached Notice explains the steps you need to take if you want to claim your pro rata share of money from the settlement, the forms you will need to fill out and return to claim your settlement award, how your damages were calculated, and who you should contact for more information about the settlement. You can review and sign the forms to claim your settlement award <u>here</u> «hyperlink».

If you have any questions, please feel free to contact me at «phone» or by e-mail at «email». If you do not wish to be contacted again about this matter, you may notify us of this at any time, and we will honor your wishes. Thank you.

«Signature Block»

---

**EXHIBIT 4**
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | |
|---|---|
| ADAM PARDUE, Individually and For Others Similarly Situated, | **Case No. 4:21-cv-00020-DC-DF** |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |
| 3B INSPECTION, LLC, | |
| Defendant. | |

**REMINDER POSTCARD**

Dear 3BI Inspector:

A lawsuit brought against 3B Inspection, LLC for unpaid overtime on behalf of its Inspectors has settled. According to the terms of the settlement, you are entitled to become a plaintiff in the lawsuit to receive a portion of the settlement funds. By this time, you should have received notice of the settlement by both mail and email containing copies of the Settlement Consent Form and Release you must fill out and return by _____, 2022 to receive your portion of the settlement.

If you have not received the notice of settlement, please call _____ or email info@mybackwages.com to request that a notice of settlement be resent to you.

**EXHIBIT 5**
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | |
|---|---|
| ADAM PARDUE, Individually and For Others Similarly Situated, | **Case No. 4:21-cv-00020-DC-DF** |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |
| 3B INSPECTION, LLC, | |
| Defendant. | |

## PROPOSED TELEPHONE SCRIPT FOR LIVE CALLS

Hello, my name is _____.

I am calling you because a lawsuit against 3B Inspection, LLC ("3BI") on behalf of current and former day rate Inspectors has settled.

3BI's records indicate that you worked as an Inspector during the relevant time period and you are eligible to receive money under the settlement. Your settlement payment is estimated to be $_____.

I would like to confirm that you received a copy of the Court Approved Settlement Notice. This was mailed and emailed to you on _____, 2022. The contact information we have for you is_____.

**If no:** What is the best method for me to send you the notice? (mail/e-mail/fax). This information will only be used to send you a copy of the settlement notice. Notice will be resent within 24 hours.

**If yes:** Have you returned the form?

> • **If not**—If you want to receive money from the settlement, you must fill out the Settlement Consent Form and Release and Form W-9 and return them to the Settlement Administrator by _____, 2022. You may return the form by U.S. Mail (postmark date), fax, or email.

If you do not wish to be contacted again about this matter, you may notify us of this fact at any time, and we will honor your wishes. Thank you.

## MESSAGES (VOICEMAIL)

Hello. This message is for «Name of Potential Class Member». My name is _____ and I work for _____. I am calling you on behalf of the 3BI Overtime Settlement. I am calling to confirm that you received the notice regarding the unpaid overtime settlement on behalf of 3BI's Inspectors who were paid a day-rate with no overtime compensation. According to the terms of the settlement, you may become a plaintiff in the lawsuit and claim a portion of the settlement.

By this time, you should have received notice of the settlement by both mail and email containing copies of the Settlement Consent Form and Release you must fill out and return to the Settlement Administrator by _____, 2022 to receive your settlement award. If you have not received the notice of settlement, please call _____ or email info@mybackwages.com to request that a notice of settlement be resent to you. Any information you provide will only be used to send you the notice.

If you do not wish to be contacted again about this matter, you may notify us of this fact at any time, and we will honor your wishes. Thank you and have a good day.